# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DISTRICT

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : Master File No. 12-md-02311 |
| | : Case No. 12-cv-00303 |
| PRODUCT(S): | : Honorable Marianne O. Battani |
| FUEL SENDERS | : |
| THIS DOCUMENT RELATES TO: | : |
| ALL END-PAYOR ACTIONS | : |

## END-PAYOR PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH YAZAKI DEFENDANTS AND PROVISIONAL CERTIFICATION OF A SETTLEMENT CLASS

Pursuant to Federal Rule of Civil Procedure 23(c) and (e), End-Payor Plaintiffs hereby move the Court for an Order to:

(1)    Preliminarily approve the proposed settlement of this litigation with defendants Yazaki Corporation and Yazaki North America, Incorporated (together, "Yazaki");

(2)    Provisionally approve the proposed Settlement Class;

(3)    Stay the proceedings against Yazaki in accordance with the terms of the Settlement Agreement;

(4)     Authorize End-Payor Plaintiffs to provide notice of the Settlement Agreement to their Settlement Class members at a later date in a form and manner to be approved in advance by this Court; and

(5)     Appoint Interim Co-Lead Class Counsel for End-Payor Plaintiffs as Settlement Class Counsel for purposes of this settlement.

In support of this Motion, End-Payor Plaintiffs rely upon and incorporate by reference herein the facts and legal arguments set forth in the accompanying Memorandum of Law.

Yazaki consents to this motion and to the entry of the proposed order.


Date:  September 22, 2014                    Respectfully submitted,


                                             s/ Warren T. Burns
                                             Marc M. Seltzer
                                             Steven G. Sklaver
                                             **SUSMAN GODFREY L.L.P.**
                                             1901 Avenue of the Stars, Suite 950
                                             Los Angeles, CA 90067-6029
                                             Telephone:  (310) 789-3100
                                             Facsimile:  (310) 789-3150
                                             mseltzer@susmangodfrey.com
                                             ssklaver@susmangodfrey.com

                                             Terrell W. Oxford
                                             Warren T. Burns
                                             **SUSMAN GODFREY L.L.P.**
                                             901 Main Street, Suite 5100
                                             Dallas, Texas 75202
                                             Telephone:  (214) 754-1900

Facsimile:  (214)754-1933
toxford@susmangodfrey.com
wburns@susmangodfrey.com


s/ Steven N. Williams
Frank C. Damrell
Steven N. Williams
Adam J. Zapala
Elizabeth Tran
**COTCHETT, PITRE & McCARTHY,
LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577
fdamrell@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com
etran@cpmlegal.com


s/ Hollis Salzman
Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS, KAPLAN, MILLER & CIRESI
L.L.P.**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone:  (212) 980-7400
Facsimile:  (212) 980-7499
hsalzman@rkmc.com
bpersky@rkmc.com
wvreiss@rkmc.com


*Interim Co-Lead Class Counsel for the
Proposed End-Payor Plaintiffs Class*

3

s/ E. Powell Miller
E. Powell Miller
Adam T. Schnatz
**THE MILLER LAW FIRM, P.C.**
The Miller Law Firm, P.C.
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
epm@millerlawpc.com
ats@millerlawpc.com

*Interim Liaison Counsel for the Proposed
End-Payor Plaintiffs Class*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : Master File No. 12-md-02311 |
| | : Case No. 12-cv-00303 |
| PRODUCT(S): | : Honorable Marianne O. Battani |
| FUEL SENDERS | : |
| THIS DOCUMENT RELATES TO: | : |
| ALL END-PAYOR ACTIONS | : |

## MEMORANDUM OF LAW IN SUPPORT OF
## END-PAYOR PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH YAZAKI DEFENDANTS AND PROVISIONAL CERTIFICATION OF A SETTLEMENT CLASS

## STATEMENT OF ISSUES PRESENTED

1.  Whether End-Payor Plaintiffs ("EPPs")' settlement with defendants Yazaki Corporation and Yazaki North America, Incorporated (together, "Yazaki"), embodied in the Settlement Agreement entered into on September 15, 2014 (the "Settlement Agreement") and attached hereto as Exhibit A, is fair, reasonable, and adequate and should be preliminarily approved;

2.  Whether the Court should provisionally certify a Settlement Class under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

3.  Whether the Court should stay the proceedings by EPPs against Yazaki in accordance with the terms of the Settlement Agreement;

4.  Whether the Court should authorize EPPs to provide notice of the Settlement Agreement to Settlement Class Members (as defined in the Settlement Agreement)[1] at a later date in a form and manner to be approved in advance by this Court; and

5.  Whether the Court should appoint Interim Co-Lead Class Counsel for EPPs as Settlement Class Counsel for this settlement.

---

[1] Unless otherwise defined, capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

## MOST CONTROLLING AUTHORITIES

Fed. R. Civ. P. 23

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013)

*Cason-Merenda v. VHS of Mich., Inc.*, 2013 U.S. Dist. LEXIS 131006, at *20-21 (E.D. Mich. Sept. 13, 2013)

*Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702 (E.D. Mich. Dec. 12, 2013)

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

*In re Corrugated Container Antitrust Litig.,* 1981 WL 2093 (S.D. Tex. Jan. 27, 1981)

*In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007)

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003)

*In re Packaged Ice Antitrust Litig.*, 2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006)

*Sheick v. Auto Component Carrier LCC*, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

PRELIMINARY STATEMENT ............................................................ 1

THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT
AGREEMENT ................................................................................. 7

    The Settlement Class .................................................................. 7

    Settlement Amount .................................................................... 8

    Cooperation .............................................................................. 8

    Released Claims ........................................................................ 9

ARGUMENT ................................................................................. 10

    I.    Preliminary Approval Should Be Granted Because The
        Proposed Settlement Falls Well Within The Range Of Possible
        Approval. ......................................................................... 11

        A.    The Settlement Agreement Achieves An Excellent Result
              For The Proposed Settlement Class, Particularly Given
              the Expense, Duration, and Uncertainty of Continued
              Litigation. ............................................................. 15

        B.    The Settlement Agreement Is The Result Of Thorough
              Arm's-Length Negotiations Conducted By Highly
              Experienced Counsel. ............................................. 19

    II.    The Proposed Settlement Class Should Be Provisionally
        Certified Pursuant To Rule 23 .......................................... 22

        A.    The Proposed Settlement Class Meets The Requirements
              Of Rule 23(a). ........................................................ 23

              i.    The Proposed Settlement Class Is So Numerous
                    That It Is Impracticable To Bring All Class
                    Members Before The Court. ........................... 24

ii. EPP Class Representatives And The Proposed Settlement Class Share Common Legal And Factual Questions............................................................25

iii. EPP Class Representatives' Claims Are Typical Of The Claims Of The Members Of The Proposed Settlement Class.............................................................27

iv. Proposed Settlement Class Counsel And EPP Class Representatives Will Fairly And Adequately Protect The Interests Of The Proposed Settlement Class.............................................................29

B. The Proposed Settlement Class Meets The Requirements Of Rule 23(b)(3)........................................................31

i. Common Questions of Law and Fact Predominate.......31

ii. A Class Action Is The Superior Method To Adjudicate These Claims..............................................34

III. Notice To The Class..........................................................36

CONCLUSION ........................................................................37

ii

# TABLE OF AUTHORITIES

## CASES

*Agretti v. ANR Freight Sys., Inc.*,
  982 F.2d 242 (7th Cir. 1992) ........................................................11

*Bacon v. Honda of America Mfg., Inc.*,
  370 F.3d 565 (6th Cir. 2004) ........................................................24

*Blades v. Monsanto Co.*,
  400 F.3d 562 (8th Cir. 2005) ........................................................33

*Bobbitt v. Acad. of Reporting*,
  2009 WL 2168833 (E.D. Mich. Jul. 21, 2009)..............................12

*Bowers v. Windstream Ky. East, LLC*,
  Civil Action No. 3:09-CV-440-H, 2013 U.S. Dist. LEXIS 157242
  (W.D. Ky. Nov. 1, 2013) ...............................................................21

*Clark Equip. Co. v Int'l Union of Allied Industrial Workers of Am.*,
  803 F.2d 878 (6th Cir. 1986) ........................................................13

*Comcast Corp. v. Behrend*,
  133 S.Ct. 1426 (2013)...................................................................32

*Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007) ...........................................................33

*Date v. Sony Elecs., Inc.*, Case No. 07-15474,
  2013 U.S. Dist. LEXIS 108095 (E.D. Mich. July 31, 2013)..........26

*Dillworth v. Case Farms Processing, Inc.*,
  No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446 (N.D. Ohio Mar. 8,
  2010) ...............................................................................................35

*Fidel v. Farley*,
  534 F.3d 508 (6th Cir. 2008) ........................................................36

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982) ........................................................14

*Golden v. City of Columbus*,
  404 F.3d 950 (6th Cir. 2005) ..........................................................................24

*Hyland v. Homeservices of Am., Inc.*, Case No. 3:05-CV-612-R,
  2008 U.S. Dist. LEXIS 90892 (W.D. Ky. Nov. 6, 2008)..............................24

*In re Aluminum Phosphide Antitrust Litig.*,
  160 F.R.D. 609 (D. Kan. 1995) .....................................................................26

*In re Ampicillin Antitrust Litig.*,
  82 F.R.D. 652 (D.D.C. 1979) ................................................................ 19, 23

*In re Blood Reagents Antitrust Litig.*,
  283 F.R.D. 222 (E.D. Pa. 2012) ....................................................................33

*In re Cardizem CD Antitrust Litig.*,
  200 F.R.D. at 307.................................................................................. 31, 32, 35

*In re Chambers Dev. Sec. Litig.*,
  912 F. Supp. 822 (W.D. Pa. 1995) ................................................................16

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) .........................................................................29

*In re Delphi Corp. Sec. Derivatives & ERISA Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) ................................................................22

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
  130 F.R.D. 366 (S.D. Ohio 1990)...................................................................20

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June
  5, 2006) ..........................................................................................................26

*In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*,
  481 F.3d 1119 (9th Cir. 2007) .......................................................................16

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 639 (E.D. Pa. 2003)..............................................................15

*In re Packaged Ice Antitrust Litig.*,
  Case No. 08-MD-01952, 2010 U.S. Dist. LEXIS 77645 (E.D. Mich.
  Aug. 2, 2010) .................................................................................................18

*In re Packaged Ice Antitrust Litig.*,
    Case No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255 (E.D. Mich.
    Feb. 22, 2011) ................................................................................. passim

*In re Packaged Ice Antitrust Litig.*,
    Case No. 08-MDL-01952,2011 U.S. Dist. LEXIS 150427 (E.D.
    Mich. Dec. 13, 2011) ....................................................................15

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MD-01952, 2010 U.S. Dist. LEXIS 140235 (E.D. Mich.
    Sept. 2, 2010)................................................................................22

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) .............14

*In re Potash Antitrust Litig.*,
    159 F.R.D. 682 (D. Minn. 1995) ....................................................32

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
    584 F. Supp. 2d 697 (M.D. Pa. 2008)..............................................18

*In re Rent-Way Sec. Litig.*,
    305 F. Supp. 2d 491 (W.D. Pa. 2003) ............................................17

*In re Southeastern Milk Antitrust Litig.*,
    Master File No. 2:09-MD-1000, 2010 U.S. Dist. LEXIS 94223 (E.D.
    Tenn. Sept. 7, 2010)......................................................................24

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*,
    Case No. 1:01-CV-9000, 2001 U.S. Dist. LEXIS 26714 (E.D. Ohio
    Oct. 19, 2001) ....................................................................... 13, 14

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
    219 F.R.D. 661 (D. Kan. 2004) ....................................................35

*In re Uranium Antitrust Litig.*,
    617 F.2d 1248 (7th Cir. 1980) ......................................................19

*In re Urethane Antitrust Litig.*,
    251 F.R.D. 629 (D. Kan. 2008) ....................................................33

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ........................................................33

*In re Vitamins Antitrust Litig.*,
209 F.R.D. 251 (D.D.C. 2002) ......................................................................33

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) .........................................................................17

*Karkoukli's, Inc. v. Dohany*,
409 F.3d 279 (6th Cir. 2005) ................................................................. 36, 37

*Leonhardt v. ArvinMeritor, Inc.*,
581 F. Supp. 2d 818 (E.D. Mich. 2008) ......................................................21

*Levva v. Medline Indus, Inc.*,
716 F.3d 510 (9th Cir. 2013) .......................................................................32

*Marcus v. Dep't of Revenue*,
206 F.R.D. 509 (D. Kan. 2002) ....................................................................30

*Miller v. Univ. of Cincinnati*,
241 F.R.D. 285 (S.D. Ohio 2006)..................................................................24

*Powers v. Hamilton Cnty. Public Defender Comm.*,
501 F.3d 595 (6th Cir. 2007) .......................................................................32

*Rankin v. Rots*, No. 02-cv-71045,
2006 U.S. Dist. LEXIS 45706 (E.D. Mich. June 28, 2006) ..........................13

*Reed v. Advocate Health Care*,
268 F.R.D. 573 (N.D. Ill. 2009) ...................................................................33

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ...................................................................16

*Senter v. Gen. Motors Corp.*,
532 F.2d 511 (6th Cir. 1976) .......................................................................29

*Stout v. J.D. Byrider*,
228 F.3d 709 (6th Cir. 2000) .......................................................................28

*Thacker v. Chesapeake Appalachia, L.L.C.*,
259 F.R.D. 262 (E.D. Ky. 2009)............................................................ 20, 36

*UAW v. Gen. Motors. Corp.*,
   497 F.3d 615 (6th Cir. 2007) ..........................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S.Ct. 2541 (2011)................................................................................ 22, 23

## **STATUTES**

Sherman Antitrust Act, 15 U.S.C. § 1 ..................................................................2, 4

## **RULES**

Fed. R. Civ. P. 23(a)(1)........................................................................................24

Fed. R. Civ. P. 23(a)(2)........................................................................... 25, 26, 27

Fed. R. Civ. P. 23(a)(3)................................................................................ 27, 28

Fed. R. Civ. P. 23(a)(4)........................................................................................29

Fed. R. Civ. P. 23(b) ............................................................................................22

Fed. R. Civ. P. 23(b)(3)(D) ..................................................................................36

Fed. R. Civ. P. 23(e)............................................................................................36

Fed. R. Civ. P. 23(e)(1)........................................................................................36

Fed. R. Civ. P. 23(g) ............................................................................................30

## **OTHER AUTHORITIES**

6A Charles Alan Wright & Arthur R. Miller, Federal Practice and
   Procedure § 1522, at 225-26 (2d ed. 1990) ...................................................11

Manual For Complex Litigation (Fourth) § 13.12 (2004) .......................................11

Manual for Complex Litigation (Second) § 30.46 (1986).......................................11

Manual for Complex Litigation (Third) § 30.41, at 235 (1995)..............................14

Newberg on Class Actions § 11.41 (4th ed. 2005) ........................................ 13, 19

Newberg on Class Actions § 18.28 at 18-98 (3d ed. 1992).....................................33

Newberg on Class Actions § 3:10 at 278 (4th ed. 2002) ...........................................26

EPPs, on behalf of themselves and all others similarly situated, by and through undersigned Interim Co-Lead Class Counsel, respectfully submit this memorandum in support of their motion seeking preliminary approval of a settlement with Yazaki and provisional certification of the proposed Settlement Class.

## PRELIMINARY STATEMENT

After well over a year of intensive, arm's-length negotiations, involving numerous meetings and information exchanges, EPPs and Yazaki have reached a comprehensive agreement to settle all EPP claims asserted against Yazaki in the Automotive Wire Harness Systems, Instrument Panel Clusters, and Fuel Senders cases now pending before this Court. The three settlements will result in a combined payment of $76 million to the EPP classes, should they be finally approved.

The combined $76 million in settlement payments represent important milestones in *In re Automotive Parts Antitrust Litig.* ("*Auto Parts*"), MDL No. 2311. First, based on evidence discovered to date, Yazaki played a crucial role in the conspiracies alleged in the three cases. As the parties prepare to engage in intensive discovery in the Automotive Wire Harness Systems, Instrument Panel Clusters, and Fuel Senders cases, Yazaki has promised to provide robust cooperation to the EPPs. Such cooperation will provide significant assistance to

1

EPPs in prosecuting their claims. Second, the Yazaki settlements are the first multi-part settlement before this Court, demonstrating that coordinated settlements in this case are obtainable—and desirable. Third, Yazaki's payment of $76 million to resolve claims in three cases represents the largest settlement obtained by EPPs to date.

This memorandum and accompanying motion concerns EPPs' and Yazaki's settlement of claims asserted in the Fuel Senders case. Fuel Senders are the mounted array of instruments and gauges housed in front of the driver of an automobile. This action arises from an alleged conspiracy among some of the automotive industry's largest manufacturers, marketers, and sellers of Fuel Senders to fix the prices, rig bids, and allocate the market and customers in the United States for such products. Defendants include: Denso Corporation and Denso International America, Inc.; and Yazaki. EPPs filed their Consolidated Amended Class Action Complaint ("Complaint") on April 15, 2013, asserting claims for relief under the Sherman Antitrust Act, 15 U.S.C. § 1, and various State antitrust, unjust enrichment, and consumer protection laws.

EPPs' Fuel Senders actions were consolidated and coordinated for pretrial purposes by Order of this Court on September 24, 2012. *See* Case Management Order No. 1 for All Dealership and End-Payor Actions, Master Case No. 2:12-md-02311-MOB, F:12-cv-00300-MOB-MKM (September 24, 2012) (ECF No. 29).

The Court also appointed the undersigned firms Interim Co-Lead Class Counsel and Interim Liaison Counsel for the End-Payor actions in the Master Docket for MDL No. 2311. *See*  Master Case No. 12-md-2311, No. 2:12-CV-00100 (Aug. 7, 2012, ECF No. 271); Order Substituting End-Payor Plaintiffs Interim Co-Lead Class Counsel, *In re Automotive Wire Harness Sys. Antitrust Litig.,* Case No. 12-MD-02311 (E.D. Mich. Feb. 12, 2013), ECF No. 505.  Throughout these cases, Interim Co-Lead Class Counsel has represented the interests of the class of EPPs in this action, including in settlement negotiations with Yazaki.  This proposed settlement is a result of those efforts.

EPPs and the class they seek to represent are consumers who purchased or leased a new vehicle in the United States not for resale which included one or more Fuel Senders as a component part, or indirectly purchased one or more Fuel Senders as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant or any co-conspirator of the Defendants. *See* Complaint, ¶¶ 3, 120-21; Settlement Agreement ¶ 10.  Plaintiffs allege that, in furtherance of the alleged conspiracy, defendants agreed, during meetings and conversations, to allocate the supply of Fuel Senders on a model-by-model basis, and then sold those products at noncompetitive prices to automobile manufacturers in the United States and elsewhere. *See* CAC, ¶¶ 5, 100-03, 118-19.

The United States Department of Justice ("DOJ") and competition authorities in the European Union and Japan have been investigating a conspiracy in the market for Fuel Senders since at least February 2010, and the Federal Bureau of Investigation ("FBI") has participated in raids and executed search warrants carried out in some of Defendants' offices, including Yazaki's U.S. subsidiary in Canton Township, Michigan. *See id.*, ¶¶ 93-98. As a result of the DOJ investigation, Yazaki Corporation, a party to the Settlement Agreement that is the subject of this motion, agreed to plead guilty and pay a $470 million criminal fine for participating in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to (a) rig bids for, and to fix, stabilize, and maintain the prices of, automotive wire harnesses and related products sold to certain automobile manufacturers in the United States and elsewhere from at least as early as January 2000 until at least February 2010, (b) rig bids for, and to fix, stabilize, and maintain the prices of, instrument panel clusters, sold to certain automobile manufacturers in the United States and elsewhere from at least as early as December 2002 and continuing until at least February 2010, and (c) fix, stabilize, and maintain the prices of, fuel senders sold to an automobile manufacturer in the United States and elsewhere from at least as early as March 2004 until at least February 2010, in violation of the Sherman Act, 15 U.S.C. § 1. See Yazaki Corporation Plea Agreement at ¶¶ 2-3, 8, *United States v. Yazaki*

*Corporation*, Case No. 2:12-cr-20064-GCS-PJK (E.D. Mich. March 1, 2012) (ECF No. 6) (Ex. B).   In furtherance of the conspiracy, and consistent with EPPs' allegations in this case, Yazaki admitted to engaging in

> discussions and attended meetings with co-conspirators involved in the manufacture and sale of fuel senders.  During such meetings and conversations, agreements were reached to allocate the supply of fuel senders sold to certain automobile manufacturers on a model-by-model basis, rig bids quoted to certain automobile manufacturers for fuel senders, and to fix, stabilize, and maintain the prices, including coordinating price adjustments requested by certain automobile manufacturers, of fuel senders sold to certain automobile manufacturers in the United States and elsewhere.

*Id.* at ¶ 4.   Yazaki's plea agreement with the DOJ did not include an order for restitution because of the potential for recovery through civil causes of action.  *Id.* at ¶ 8(c).

The instant settlement is the first multi-part settlement in MDL 2311. Though occurring early in this litigation, the settlement provides a guaranteed recovery of $58,000 to the End-Payors.  But the settlement is even more valuable to the EPPs because it also requires Yazaki to provide early and comprehensive cooperation in the form of, *inter alia*, attorney proffers, interviews with and depositions of percipient witnesses, and the production of documents (including transactional data), related to the claims asserted in this case, including information concerning sales of Fuel Senders in the United States.  Particularly at this point in the litigation as intensive discovery commences, the ability to obtain such

information without protracted and expensive adversarial discovery is quite valuable to EPPs. Yazaki's cooperation will greatly enhance Plaintiffs' ability to prosecute their claims against non-settling defendants.

A payment of $58,000 is a meaningful settlement, particularly in light of the value of individual Fuel Senders and the amount of commerce involved, and is a significant early achievement in this litigation. It also bears noting that the Settlement Agreement provides that Yazaki's sales will remain in the case for purposes of computing the treble damages claim against the non-settling defendants and shall be part of any joint and several liability claims against other current or future defendants. *See* Settlement Agreement ¶ 47. In other words, EPPs and the proposed Settlement Class retain their ability to recover from the remaining defendants the entire damages caused by the alleged conspiracy, even those attributable to Yazaki, less only the amount paid by Yazaki in settlement.

For the reasons discussed in detail in this memorandum, EPPs submit that the settlement with Yazaki is in the best interest of the proposed Settlement Class and merits the Court's preliminary approval. EPPs therefore request the entry of an Order:

1.      Preliminarily approving the Settlement;

2.      Provisionally certifying the proposed Settlement Class;

6

3.      Staying the proceedings against Yazaki in accordance with the terms of the Settlement Agreement;

4.      Authorizing EPPs to provide notice of the Settlement Agreement to class members at a later date, in a form and manner to be approved in advance by this Court; and

5.      Appointing Interim Co-Lead Class Counsel for EPPs as Settlement Class Counsel for this settlement.

## THE BASIC TERMS AND BACKGROUND OF
## THE SETTLEMENT AGREEMENT

The Settlement Agreement with Yazaki arises from extensive arm's length and good faith negotiations. For over a year, counsel participated in fact-gathering sessions and informational meetings, as well as extensive negotiations that took place during multiple in-person meetings and telephone calls.

The Settlement Class: The Settlement Agreement defines the Settlement Class as follows:

> All persons and entities from January 1, 1999, through the execution date of this Agreement between Yazaki and End-Payor Plaintiffs (the "Execution Date") who: purchased or leased a new vehicle in the United States not for resale, which included one or more Fuel Senders as a component part, or indirectly purchased one or more Fuel Senders as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirators of the Defendants. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their

7

subdivisions, agencies and instrumentalities, and persons who purchased Fuel Senders directly or for resale.

Settlement Agreement ¶ 10.

Settlement Amount:  Yazaki has agreed to pay $58,000 within 30 days after entry of an order preliminarily approving the Settlement Agreement.  *See id.* ¶ 22. The Settlement Amount shall be paid into an interest-bearing escrow account at U.S. Bank N.A.  *See id.* ¶¶ 23.

Cooperation:  Yazaki has agreed to provide extensive cooperation to the proposed Settlement Class that will significantly aid in the prosecution of antitrust claims against the remaining defendants.  A general summary of Yazaki's cooperation obligations is provided below.  The full extent of this cooperation is set forth in more detail in Section F of the Settlement Agreement. Pursuant to its cooperation obligations, Yazaki must:

a.    all current and former employees, directors and officers of Yazaki who: (1) were interviewed and/or prosecuted by the United States Department of Justice ("DOJ"), the Japanese Fair Trade Commission, and/or the European Commission (collectively referred to herein as "Government Entities") in connection with alleged price-fixing, bid rigging, market allocation, and/or other unlawful anticompetitive activity concerning the sale of Fuel Senders to the extent such interviews or prosecutions related in any way, directly or indirectly, to automobiles manufactured and sold in the United States; (2) appeared before the grand jury in the DOJ's investigation into alleged antitrust violations with respect to Fuel Senders; and/or (3) were disclosed to the DOJ as having knowledge or information relating to the DOJ Information against, and Plea Agreement with, Yazaki Corporation with respect to Fuel Senders.

8

b.      produce certain documents and transactional data, which are relevant to the claims alleged in the Complaint or that relate to or concern any actual or potential communication, meeting, or agreement between Yazaki and one or more of its competitors, regarding Fuel Senders;

c.      make its counsel available to proffer facts known to them regarding Documents, witnesses, meetings, communications, agreements with competitors, events, background information and any other relevant topics not covered by privilege or other protections available under any applicable statute or United States law;

d.      use its best efforts to make available persons selected by Settlement Class Counsel, including current and former directors, officers and/or employees with knowledge of relevant facts, for interviews, depositions, declarations or affidavits, and if necessary,   trial testimony; and

e.      make qualified representatives available to authenticate, establish as business records, or otherwise establish any other necessary foundation for admission into evidence of any of Yazaki's Documents and Transactional Data produced or to be produced, and to the extent possible, any Documents produced by Defendants or third-parties.

Released Claims:  The Settlement Agreement releases only Yazaki (and its past and present, direct and indirect, parents, subsidiaries, and affiliates, including but not limited to the predecessors, successors and assigns of each of the above; and each and all of their present and former principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, and assigns) from all Settlement Class Member claims arising out of or relating in any way to any conduct alleged in the Complaint or any act or omission of Yazaki, concerning Fuel Senders.  *See* Ex. A, Settlement Agreement ¶¶  8, 20.  However, the release does not include:  (1) any

9

claims made by direct purchasers of Fuel Senders as to such direct purchasers; (2) any claims made by automotive dealerships that are indirect purchasers of Fuel Senders; (3) any claims made by any state, state agency, or instrumentality or political subdivision of a state as to government purchases and/or penalties; (4) claims involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities or similar claim relating to Fuel Senders; (5) claims concerning any automotive part other than Fuel Senders; (6) claims under laws other than those of the United States relating to purchases of Fuel Senders made outside of the United States; and (7) claims for damages under the state or local laws of any jurisdiction other than an Indirect Purchaser state. *See Id.* ¶ 20. Further, the Settlement Agreement provides that Yazaki's sales shall remain in the continuing litigation against the non-settling Defendants, who remain jointly and severally liable for all damages caused by the conspiracy. *See id.* ¶ 47.

## ARGUMENT

The Settlement Agreement is not only fair, reasonable and adequate resulting from extensive, arm's length negotiations by experienced counsel, but also a thoughtfully conceived resolution of the proposed Settlement Class's claims that maximizes their recovery and guarantees early, significant cooperation by Yazaki in the continued prosecution of EPPs' claims.

10

I.     **Preliminary Approval Should Be Granted Because The Proposed Settlement Falls Well Within The Range Of Possible Approval.**

It is well-established in the Sixth Circuit that there is an overriding public interest in settling and quieting litigation, particularly class actions. *See Griffin v. Flagstar Bancorp, Inc.*, Case No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702, at *6 (E.D. Mich. Dec. 12, 2013) (citing *UAW v. Gen. Motors. Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions")); *see also IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006). "This policy applies with equal force whether the settlement is partial, involving only some of the defendants, or complete." *In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255, at *44 (E.D. Mich. Feb. 22, 2011) ("*Packaged Ice*"); *see also Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) ("In complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions.'" (quoting MANUAL FOR COMPLEX LITIGATION (SECOND) § 30.46 (1986)). In fact, "settlement should be facilitated at as early a stage of the litigation as possible." 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1522, at 225-26 (2d ed. 1990) (citing 1983 Advisory Committee Notes); *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.12 (2004) ("*Manual*") ("settlement should be explored early in the case.").

11

Approval of a proposed class action settlement proceeds in two steps.  First, the court grants preliminary approval to the settlement and provisionally certifies a settlement class.  Second, after notice of the settlement is provided to the class and the court conducts a fairness hearing, the court may grant final approval to the settlement. *See Manual* § 21.63; *see also Bobbitt v. Acad. of Reporting,* 2009 WL 2168833, at *1 (E.D. Mich. Jul. 21, 2009) (citing authorities).

A proposed settlement agreement should be preliminarily approved if "the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and [the settlement] appears to fall within the range of possible approval." *Manual* § 30.41 at 237; *see also Int'l Union, UAW v. Ford Mo*(E.D. Mich. July 13, 2006)*t"  \s "WSFTA_906b0f40795a4f4fb282ba1b40681481" \c 3 Int'l Union, UAW v. Ford Mo*(E.D. Mich. July 13, 2006)*t" \s "WSFTA_cb5106116e584626b155cdd070142f18" \c 3 Int'l Union, UAW v. Ford Mo*(E.D. Mich. July 13, 2006)*t"  \s "WSFTA_7b65f0d11dc74cf5b34fc348b6923d78" \c 3 Int'l Union, UAW v. Ford Motor Co.*, Case Nos. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS 70471 at *11 (E.D. Mich. July 13, 2006).  The district court's role in reviewing settlements "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate

to all concerned." *Clark Equip. Co. v Int'l Union of Allied Industrial Workers of Am.*, 803 F.2d 878, 880 (6th Cir. 1986).  Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval."  4 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2005) ("*Newberg*") (collecting cases); *cf. Rankin v. Rots*, No. 02-cv-71045, 2006 U.S. Dist. LEXIS 45706, at *9 (E.D. Mich. June 28, 2006) ("[T]he only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.") (internal quotation marks omitted).

In considering whether to grant preliminary approval, the court is not required at this point to make a final determination of the adequacy of the settlement or to delve extensively into the merits of the settlement. *See In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, Case No. 1:01-CV-9000, 2001 U.S. Dist. LEXIS 26714, at *17 (E.D. Ohio Oct. 19, 2001) ("*Sulzer Hip*"). These inquiries are reserved for the final approval stage of the class settlement approval process.  Nor will any class member's substantive rights be prejudiced by preliminary approval because the proposed preliminary approval is solely to provide authority for notifying the class of the terms of the settlement agreement to set the stage for review of its final approval. *Id.*; *Newburg* § 11.25.  Consequently, courts generally engage only in a limited inquiry to determine whether a proposed settlement falls

13

within the range of possible approval and thus should be preliminarily approved. *Sulzer Hip*, 2001 U.S. Dist. LEXIS 26714 at *17-18 (preliminary approval may be based on "informal presentations" because of "substantial judicial processes that remain") (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41, at 235 (1995)). *See also In re Packaged Ice Antitrust Litig.,* No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010), *quoting Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982) (inquiry limited to settlement's potential for final approval and propriety of class notice and fairness hearing).

In evaluating whether a settlement is fair, reasonable and adequate, courts in the Sixth Circuit consider a number of factors:

> (1) the likelihood of success on the merits weighed against the amount and form of relief in the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest.  The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case.

*Packaged Ice*, 2011 U.S. Dist. LEXIS 17255 at *46-47 (quotation marks and citations omitted).

A court is not required at the preliminary approval stage to determine whether it ultimately will finally approve the settlement.  Nevertheless, as set forth in detail below, preliminary consideration of the factors a court considers when evaluating

the fairness of a settlement for purposes of deciding whether to grant final approval

supports this Court's granting preliminary approval of the Settlement Agreement.

> **A.    The Settlement Agreement Achieves An Excellent Result For The Proposed Settlement Class, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation.**

Antitrust class actions are "arguably the most complex action(s) to

prosecute.   The legal and factual issues involved are always numerous and

uncertain in outcome."  *In re Packaged Ice Antitrust Litig.*, Case No. 08-MDL-

01952, 2011 U.S. Dist. LEXIS 150427, at *76 (E.D. Mich. Dec. 13, 2011) (quoting

*Linerboard*, 292 F. Supp. at 639); *see also In re Cardizem CD Antitrust Litig.*, 218

F.R.D. 508, 533 (E.D. Mich. 2003) ("*Cardizem*") ("Moreover, the complexity of

this case cannot be overstated.   Antitrust class actions are inherently complex").

Motions have already been vigorously contested, and the discovery process would

be all the more complicated due to the unique issues that attend discovery against

foreign parties.[2]   Additionally, Yazaki would assert various defenses, and a jury

trial might well turn on questions of proof, many of which would be the subject of

complicated expert testimony, particularly with regard to impact and damages,

making the outcome of such trial uncertain for both parties.  *See*, *e.g.*, *Cardizem*,

218 F.R.D. at 523 (in approving settlement, noting that "the prospect of a trial

necessarily involves the risk that Plaintiffs would obtain little or no recovery and

---

[2] Because Interim Co-Lead Class Counsel may have to litigate against other defendants through trial and appeal, their duties to the Class preclude a more detailed discussion of their potential litigation risks.

that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation"); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255 at *53-54 (noting the "undeniable inherent risks" in antitrust class action litigation including "whether the class will be certified and upheld on appeal, whether the conspiracy as alleged in the Complaint can be established, whether Plaintiffs will be able to demonstrate class wide antitrust impact and ultimately whether Plaintiffs will be able to prove damages"). *Id.*  Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes."  *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Moreover, given the stakes involved, an appeal is nearly certain to follow regardless of the outcome at trial. This creates additional risk, as judgments following trial may be overturned on appeal.  *See, e.g.*, *In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119 (9th Cir. 2007) ($52.5 million class action judgment following trial reversed on appeal); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed and judgment entered for defendant).  And, even if class members were willing to assume all of the litigation risks, the passage of time would introduce still more risks in terms of appeals and possible changes in the law that would, in light of the time value of money, make future recoveries less

16

valuable than recovery today. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) ("[I]t was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class"); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 501 (W.D. Pa. 2003) ("[A] future recovery, even one in excess of the proposed Settlement, may ultimately prove less valuable to the Class than receiving the benefits of the proposed Settlement at this time"). Hence, "the certain and immediate benefits to the Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal." *Cardizem*, 218 F.R.D. at 525.

Against this background, an early settlement providing the substantial benefits afforded here represents an excellent result for the members of the proposed Settlement Class. Yazaki's $58,000 payment provides for meaningful compensation to the proposed Settlement Class that will be available earlier – perhaps years earlier – than would be the case if litigation against Yazaki continued through trial and appeal. Moreover, courts have long recognized that early settlements of this type create value beyond their direct pecuniary benefit to the class. Early settlements may strengthen plaintiffs' hand in the litigation and encourage future settlements. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255 at

*50-51 (noting "significant value" of early settlement); *Linerboard*, 292 F. Supp. 2d at 643; *In re Corrugated Container Antitrust Litig.*, 1981 WL 2093, *16 (S.D. Tex. Jan. 27, 1981) ("*Corrugated Container*").

Of particular importance is the fact that the Settlement Agreement further requires Yaazaki to provide substantial cooperation to the EPPs' counsel by providing factual proffers, interviews, documents, depositions and trial testimony, among other things. *See* Settlement Agreement § F. This cooperation is extremely valuable to the class. The effective early-stage cooperation facilitated by the Settlement Agreement will afford the EPPs access to documents and witnesses without protracted and expensive discovery – a significant class-wide benefit. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2010 U.S. Dist. LEXIS 77645, at *44 (E.D. Mich. Aug. 2, 2010) ("Particularly where, as here, there is the potential for a significant benefit to the class in the form of cooperation on the part of the settling Defendant, this Court is reluctant to refuse to consider the very preliminary approval that will trigger that cooperation."); *see also Linerboard*, 292 F. Supp. 2d at 643; *Corrugated Container*, 1981 WL 2093 at *16; *cf. In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("[T]he benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment").

The Settlement Agreement also specifically provides that it does not purport to alter the non-settling defendants' joint and several liability for the full damages caused by the alleged conspiracy, including all sales made by Yazaki. *See* Settlement Agreement ¶ 47. In this regard, the Settlement Agreement is similar to one of the settlements approved in *Corrugated Container*, where the court noted the "valuable provision" under which plaintiffs reserved their right to recover full damages from the remaining defendants, less the actual amount of the initial settlement. 1981 WL 2093 at *17; *see also In re Uranium Antitrust Litig.*, 617 F.2d 1248 (7th Cir. 1980); *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class will "relinquish no part of its potential recovery" due to joint and several liability). Here too, the EPPs will be able to pursue their full damages, with no diminution other than deduction of the actual Yazaki settlement amount.

### B.     The Settlement Agreement Is The Result Of Thorough Arm's-Length Negotiations Conducted By Highly Experienced Counsel.

This settlement is entitled to "an initial presumption of fairness" because it is the result of arm's-length negotiations among experienced counsel.[3] *Newberg* § 11.41. The judgment of proposed Settlement Class Counsel that the settlement is in the best interest of the proposed Settlement Class "is entitled to significant

---

[3] There is no doubt that the counsel who negotiated the Settlement Agreement on behalf of both EPPs and Yazaki are highly experienced and capable. *See* EPPs' Application For Appointment Of Interim Co-Lead Class Counsel And Liaison Counsel, *In re Automotive Wire Harness Sys. Antitrust Litig.*, Case No. 12-MD-02311 (E.D. Mich. Mar. 8, 2012), ECF No. 24.

weight, and supports the fairness of the class settlement*." Sheick v. Auto Component Carrier LCC*, Case No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411, at *51 (E.D. Mich. Oct. 18, 2010) (quoting *IUE-CWA*, 238 F.R.D. at 597); *see also Cardizem*, 218 F.R.D. at 525.   Courts give great weight to the recommendation of experienced counsel for the parties in evaluating the adequacy of a settlement.

"Preliminary approval of a proposed settlement is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262 (E.D. Ky. 2009) (quoting *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 370 (S.D. Ohio 1990)).   Here, the Settlement Agreement is the result of lengthy and hard-fought negotiations between counsel experienced in complex antitrust and consumer class action litigation.   Interim Co-Lead Class Counsel negotiated the Settlement Agreement, in its initial form, over a period exceeding one year in a process that involved multiple in-person meetings and calls with counsel for Yazaki.   In preparation for such negotiations, Interim Co-Lead Class Counsel undertook a diligent and thorough investigation of the legal and factual issues posed by this litigation and consulted extensively with experienced economists.

Despite the fact that the Settlement Agreement comes at a relatively early stage of this multi-district litigation, proposed Settlement Class Counsel were well-informed as to the facts of the case and the strength of the claims asserted when the terms of the Settlement Agreement were initially negotiated. EPPs have benefitted from initial discovery and informal exchanges of information. Even where formal discovery has not been taken, courts have approved early-state settlements. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *56 ("[T]he absence of formal discovery is not an obstacle [to settlement approval] so long as the parties and the Court have adequate information in order to evaluate the relative position of the parties.") (quotation marks and citation omitted); *Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702 (same).

Moreover, these negotiations were adversarial and conducted in the utmost good faith. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008); *Bowers v. Windstream Ky. East, LLC*, Civil Action No. 3:09-CV-440-H, 2013 U.S. Dist. LEXIS 157242, at *5 (W.D. Ky. Nov. 1, 2013). There is nothing in the course of the negotiations or the substance of the settlement that "disclose[s] grounds to doubt its fairness." *Manual* § 30.41.

21

## II.   The Proposed Settlement Class Should Be Provisionally Certified Pursuant To Rule 23.

The Manual notes the propriety of certifying a class solely for purposes of settlement, *see Manual* § 21.32, and courts in this Circuit routinely provisionally approve a proposed settlement class before deciding plaintiffs' motion for class certification.   *See, e.g.*, *In re Delphi Corp. Sec. Derivatives & ERISA Litig.*, 248 F.R.D. 483, 486 n. 2 (E.D. Mich. 2008) (granting final approval to both ERISA and Securities settlement classes, noting the court's earlier, preliminary approval of the settlement classes granted prior to a hearing on defendants' motions to dismiss); *Cardizem*, 218 F.R.D. at 516-17, 530 (granting final approval of proposed settlement, noting its earlier preliminary approval of both the proposed settlement class and the proposed settlement agreement granted prior to class certification and prior to hearing on motions to dismiss).   A court may grant provisional certification where, as here, the proposed settlement class satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b).   *See In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 U.S. Dist. LEXIS 140235, at *27-28 (E.D. Mich. Sept. 2, 2010).

While the Supreme Court recently reiterated that a trial court must conduct a "rigorous analysis" to confirm that the requirements of Rule 23 have been met, *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011), "the requisite

22

'rigorous analysis' of the record and consideration of the merits must be focused on and limited to the question whether the Rule's requirements have been established." *Cason-Merenda v. VHS of Mich., Inc.*, 2013 U.S. Dist. LEXIS 131006, at *20-21 (E.D. Mich. Sept. 13, 2013) (citing *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013)). Permissible inquiry into the merits of plaintiffs' claims at the class certification stage is limited:

> Rule 23 grants courts no license to engage in free-ranging merits inquiries at the class certification stage. Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) ("*Amgen*") (citing *Dukes*, 131 S.Ct. at 2552 n.6). "In other words, district courts may not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *In re Whirlpool Corp.*, 722 F.3d 838, 851-52 (internal quotation marks and citation omitted). Here, as demonstrated below, even under a "rigorous analysis," the requirements of Rule 23 of the Federal Rules of Civil Procedure are easily met.

### A.   The Proposed Settlement Class Meets The Requirements Of Rule 23(a).

Horizontal price fixing class actions are routinely certified in this District and elsewhere. EPPs' allegations of "a per se violation of the antitrust laws are exactly the kind of allegations which may be proven on a class-wide basis through common proof." *In re Southeastern Milk Antitrust Litig.*, Master File No. 2:09-

MD-1000, 2010 U.S. Dist. LEXIS 94223, at *35 (E.D. Tenn. Sept. 7, 2010). "Courts have held that the existence of a conspiracy is the predominant issue in price fixing cases, warranting certification of the class even where significant individual issues are present." *Id.* at *33 (internal quotation marks and citations omitted). "As a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 409 (S.D. Ohio 2007); *see also Hyland v. Homeservices of Am., Inc.*, Case No. 3:05-CV-612-R, 2008 U.S. Dist. LEXIS 90892, at *12 (W.D. Ky. Nov. 6, 2008).

### i.    *The Proposed Settlement Class Is So Numerous That It Is Impracticable To Bring All Class Members Before The Court.*

No magic number is required to satisfy the numerosity requirement of Rule 23(a)(1). *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006). A class representative need only show that joining all members of the potential class is extremely difficult or inconvenient. *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005). The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 403 (citing *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)); *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

Here, the proposed Settlement Class consists of persons and entities who, from January 1, 1999 up to and including the Execution Date, purchased or leased a new vehicle in the United States not for resale, which included one or more Fuel Senders as a component part, or indirectly purchased one or more Fuel Senders as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirators of the Defendants. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Fuel Senders directly or for resale.   Since 1999, it is beyond dispute that millions of persons and entities throughout the United States have purchased or leased vehicles containing Fuel Senders for personal use.  Because of the large number of putative class members and their geographical distribution throughout the United States, joinder is highly impractical, if not impossible.

### ii.    EPP Class Representatives And The Proposed Settlement Class Share Common Legal And Factual Questions.

Commonality only requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  While Rule 23(a)(2) speaks of questions of law or fact in the plural, "there need be only one common question to certify a class."  *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d

at 853; *see also Cason-Merenda*, 2013 U.S. Dist. LEXIS 131006, at *22 (one common question of law or fact is sufficient); *Griffin v. Flagstar Bancorp Inc.*, 2013 U.S. Dist. LEXIS 173702 (same); *Date v. Sony Elecs., Inc.*, Case No. 07-15474, 2013 U.S. Dist. LEXIS 108095, at *10 (E.D. Mich. July 31, 2013) (same).

This prerequisite is readily satisfied here because "antitrust price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy." *In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 613 (D. Kan. 1995). Thus, in price fixing cases, courts "have consistently held that the very nature of a conspiracy in an antitrust action compels a finding that common questions of law and fact exist." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006); *see also Newberg* § 3:10 at 278 ("[In an] antitrust action on behalf of purchasers who have bought defendants' products at prices that have been maintained above competitive levels by unlawful conduct, the courts have held that the existence of an alleged conspiracy or monopoly is a common issue that will satisfy the Rule 23(a)(2) prerequisite").

Here, EPPs have identified the following issues common to the proposed Settlement Class:

- Whether Yazaki and its co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain, or stabilize the prices of Fuel Senders sold in the United States;

- Whether Yazaki and its co-conspirators engaged in a combination and conspiracy among themselves to rig bids quoted to customers of Fuel Senders sold in the United States;

- Whether Yazaki and its co-conspirators engaged in a combination and conspiracy to allocate customers and the markets for Fuel Senders sold in the United States;

- The duration of the illegal contract, combination, and/or conspiracy;

- Whether Yazaki's and its co-conspirators' conduct resulted in an unlawful overcharge on the price of Fuel Senders; and

- Whether the unlawful overcharge on the price of Fuel Senders was passed-through to the indirect purchasers of Fuel Senders, and if so, the appropriate measure of damages.

Any one of these substantive issues would, standing alone, establish the requisite commonality under Rule 23(a)(2).

### iii.     EPP Class Representatives' Claims Are Typical Of The Claims Of The Members Of The Proposed Settlement Class.

Third, Rule 23(a) requires typicality of the class representatives' claims.  *See* Fed. R. Civ. P. 23(a)(3).  "The [typicality] requirement is not onerous," *Int'l Union, UAW v. Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471 at *54, and courts liberally construe it.  *See In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 403. "In the antitrust context, typicality is established when the named plaintiffs and all class members allege[] the same antitrust violation by defendants."  *Cason-*

27

*Merenda*, 2013 U.S. Dist. LEXIS 131006 at *25 (quoting *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 405); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000); *In re Am. Med. Sys.*, 75 F.3d at 1082; *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255 at *40-41.  "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702, at *17-18 (quotation marks and citation omitted); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40 (same).

Because the End-Payor Plaintiff Class representatives and the members of the proposed Settlement Class were all victims of the conspiracy to fix prices, rig bids, and allocates the market and customers for Fuel Senders and seek the same relief, Rule 23(a)(3) is satisfied.  *See Cason-Merenda*, 2013 U.S. Dist. LEXIS 131006 at *26 (finding typicality met where "the claims of the named Plaintiffs and those of the remaining members of the proposed class all arise from the same conspiracy and are based on the same theory of liability under the Sherman Act.") (internal quotation marks and citation omitted)); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255 at *40-41 ("Because all Class Members' claims arise from . . . a conspiracy to allocate markets in violation of the Sherman Act, their claims are based on the same legal theory and the typicality requirement . . . is met").

> **iv.    Proposed Settlement Class Counsel And EPP Class Representatives Will Fairly And Adequately Protect The Interests Of The Proposed Settlement Class.**

The final requirement of Rule 23(a) is that the representative parties "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Sixth Circuit has articulated two criteria for determining adequacy of representation: "'1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'"  *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 407 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)).  EPPs submit that there are no conflicts between them and the proposed Settlement Class because EPPs and members of the proposed Settlement Class:  (i) purchased or leased in the United States, for personal use, and not for resale, motor vehicles containing Fuel Senders; and/or (ii) Fuel Senders as a stand-alone replacement product, that they have the same interest in establishing liability, and that they all seek damages for the ensuing overcharge.  *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes" (internal quotation marks and citation omitted)).  EPPs and the members

29

of the proposed Settlement Class also share a common interest in obtaining Yazaki's early and substantial cooperation in prosecuting the claims against the non-settling Defendants.

Rule 23(g) requires the Court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The proposed Settlement Class is represented by counsel with extensive experience in antitrust and class action litigation. They have vigorously prosecuted the class claims, and they will continue to do so through all phases of the litigation, including trial. *See Marcus v. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002) ("In absence of evidence to the contrary, courts will presume the proposed class counsel is adequately competent to conduct the proposed litigation"). The Court appointed Cotchett, Pitre & McCarthy, LLP, Robins, Kaplan, Miller & Ciresi L.L.P., and Susman Godfrey L.L.P. as Interim Co-Lead Class Counsel in this action and the related automotive parts antitrust litigations. Case Management Order No. 3, *In re Automotive Wire Harness Sys. Antitrust Litig.*, Case No. 12-MD-02311 (E.D. Mich. Aug. 7, 2012), ECF No. 271. For the same reasons that the Court appointed them to this position, it should appoint them Settlement Class Counsel here.

### B.   The Proposed Settlement Class Meets The Requirements Of Rule 23(b)(3).

To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites:  common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) ("*Amchem*"); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008).  With respect to both requirements, the Court need not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial."  *Amchem*, 521 U.S. at 620 (internal citations omitted).

### i.   *Common Questions of Law and Fact Predominate.*

"Rule 23(b)(3) does not mandate that a plaintiff seeking class certification prove that each element of the claim is susceptible to classwide proof."  *In re Whirlpool Corp.*, 722 F.3d at 859.  Instead, "'[a] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position.'"  *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 408 (quoting *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. at 307).  Common questions need only predominate; they need not be

31

dispositive of the litigation. *Id.* (citing *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)); *cf. In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535-36 (holding issues regarding the amount of damages do not destroy predominance). "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Cason-Merenda v. VHS of Mich., Inc.*, 2013 U.S. Dist. LEXIS 131006, at *19-20 (quoting *Powers v. Hamilton Cnty. Public Defender Comm.*, 501 F.3d 595, 619 (6th Cir. 2007)). As pertinent to End-Payor Plaintiffs' request here to provisionally certify the proposed Settlement Class under Rule 23(b)(3), the Supreme Court very recently instructed that "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 133 S.Ct. at 1191.[4]

Because the proposed Settlement Class alleges a single global conspiracy relating to Fuel Senders from which all proposed Settlement Class Members' injuries arise, issues common to the proposed Settlement Class Members – for

---

[4] The Supreme Court's recent decision in *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013), supports the appropriateness of class certification under Rule 23(b)(3) here. In *Comcast*, the Supreme Court found that the plaintiffs failed to establish that damages could be measured on a class-wide basis because only one of the plaintiffs' four theories of antitrust impact could be proved in a manner common to the class. 133 S.Ct. at 1429-31. Under *Comcast*, plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability. *See Levva v. Medline Indus, Inc.*, 716 F.3d 510 (9th Cir. 2013). Here, all of the proposed Settlement Class's claimed damages – the overcharge suffered as a result of inflated Instrument Panel Clusters prices – stem from the Defendants' alleged price-fixing conspiracy.

example, the existence and scope of the alleged price-fixing conspiracy among Defendants, the market impact of Defendants' conspiracy, and the aggregate amount of damage suffered by the class as a result of the alleged antitrust violations – predominate over any individual questions, and therefore class treatment of the claims is appropriate for purposes of this settlement. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws."); *see also In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 254 (D.D.C. 2002) ("as a rule, the allegation of a price-fixing conspiracy is sufficient to establish predominance of common questions") (quoting NEWBERG ON CLASS ACTIONS § 18.28 at 18-98 (3d ed. 1992)).  This Circuit has also held "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws, because proof of the *conspiracy* is a common question that is thought to predominate over the other issues of the case."  *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535 (quoting *Amchem*, 521 U.S. at 625).[5] Furthermore, here EPPs submit that the evidence that will prove a violation as to one Settlement Class Member is common to the Class and will be sufficient to

---

[5] Similarly, other courts have recognized that the existence and scope of an alleged antitrust conspiracy are matters susceptible to class-wide proof, and thus tend to support a finding that common issues predominate over individual ones as to at least the first element of an antitrust conspiracy claim. *See, e.g., Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007); *Blades v. Monsanto Co.*, 400 F.3d 562, 572 (8th Cir. 2005); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001); *In re Blood Reagents Antitrust Litig.*, 283 F.R.D. 222, 234 (E.D. Pa. 2012); *Reed v. Advocate Health Care*, 268 F.R.D. 573, 581 (N.D. Ill. 2009); *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 634 (D. Kan. 2008); *Foundry Resins*, 242 F.R.D. at 408.

prove it as to all – the anticompetitive conduct is not dependent on the separate conduct of the individual Settlement Class Members. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255 at *43.

This is true even if there are individual state law issues, as long as the common issues still outweigh the individual ones, *e.g.*, as long as a common theory can be alleged as to liability and impact that can be pursued by the class. *See, e.g.*, *In re Whirlpool Corp.*, 722 F.3d at 861 ("[I]t remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members." (internal quotation marks and citation omitted)); *Scrap Metal*, 527 F.3d at 535 (where common issues determine liability, fact that damages calculation may involve individualized issues does not defeat predominance). Issues common to the proposed Settlement Class predominate in this case – all EPPs paid overcharges that were caused by the Defendants' price-fixing activities. The presence of these common issues of liability and impact predominates over any individual issues and strongly support provisional certification of the proposed Settlement Class.

> ### ii.    *A Class Action Is The Superior Method To Adjudicate These Claims.*

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. The superiority of class

certification over other available methods is measured by consideration of certain factors, including:  the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class action.  *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446 (N.D. Ohio Mar. 8, 2010).

Courts consistently hold that class actions are a superior method of resolving antitrust claims like those alleged here.  *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 678 (D. Kan. 2004) (noting that individual litigation of antitrust claims would be "grossly inefficient, costly, and time consuming").  Here, the interests of Settlement Class Members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism.  *Cardizem*, 200 F.R.D. at 325-26 (finding that class action is superior because it ensures fair and efficient adjudication).  Millions of persons and entities purchased or leased vehicles containing Fuel Senders as a component part or purchased Fuel Senders as a replacement part for a vehicle during the Settlement Class Period; resolving these claims in the context of a class action would conserve both judicial and private resources and would hasten the class members' recovery. *See, e.g., In re Foundry Resins*, 242 F.R.D. at 411-12 ("Repeatedly litigating the

same issues in individual suits would produce duplicate efforts, unnecessarily increase litigation costs, impose an unwarranted burden on this Court and other courts, and create a risk of inconsistent results").[6]

## III.   Notice To The Class

Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  With regard to class action claims that are settled, Rule 23(e) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  "[D]ue process does not require actual notice, but rather a good faith effort to provide actual notice."  *Thacker*, 259 F.R.D. at 271-72.  To comport with the requirements of due process, notice must be "reasonably calculated to reach interested parties."  *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008) (citing *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005)).

Interim Co-Lead Class Counsel anticipates additional settlements with Defendants in this action.  Because it would be most cost-effective and efficient to

---

[6] Another criterion of Rule 23(b)(3) is manageability.  The Supreme Court has made clear that manageability need not be considered where, as here, a class is being certified for settlement purposes.  *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

disseminate notice of this settlement together with notice of other settlements, the parties have agreed to defer dissemination of notice.  As set forth in the Settlement Agreement: "End-Payor Plaintiffs, at a time to be decided in their sole discretion, shall submit to the Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all Settlement Class Members identified by End-Payor Plaintiffs (the "Notice Motion")." Settlement Agreement ¶ 16.  The Notice Motion to be subsequently submitted to the Court for its approval shall include "a proposed form of, method for, and date of dissemination of notice." *Id*.  Accordingly, with the Court's permission, proposed Settlement Class Counsel will submit a proposed motion for authorization to disseminate notice at a later date.

## CONCLUSION

For the foregoing reasons, EPPs respectfully request that the motion for preliminary approval be granted and that the Court enter the accompanying Proposed Order:

1.    Preliminarily approving the Settlement Agreement;

2.    Provisionally certifying the proposed Settlement Class;

3.    Staying the proceedings against Yazaki in accordance with the terms of the Settlement Agreement;

4.    Authorizing EPPs to provide notice of the Settlement Agreement to Settlement Class members at a later date, in a form to be approved in advance by this Court; and

5.    Appointing Interim Co-Lead Class Counsel for the EPPs as Settlement Class Counsel for this settlement.

Date:  September 19, 2014          Respectfully submitted,

s/ Warren T. Burns
Marc M. Seltzer
Steven G. Sklaver
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, California 90067
Telephone:  (310) 789-3100
Facsimile:  (310) 789-3150

Terrell W. Oxford
Warren T. Burns
SUSMAN GODFREY LLP
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone:  (214) 754-1900
Facsimile:  (214) 754-1933

s/ Steven N. Williams
Frank C. Damrell
Steven N. Williams
Adam J. Zapala
Elizabeth Tran
Joanna W. LiCalsi
COTCHETT, PITRE & MCCARTHY, LLP

38

San Francisco Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577



s/ Hollis Salzman
Hollis Salzman
Bernard Persky
William V. Reiss
ROBINS, KAPLAN, MILLER & CIRESI
L.L.P.
601 Lexington Avenue Suite 3400
New York, New York 10022
Telephone:  (212) 980-7400
Facsimile:  (212) 980-7499


***Interim Co-Lead Class Counsel and
Settlement Class Counsel***

/s/ *E. Powell Miller*
E. Powell Miller (P39487)
Adam Schnatz (P72049)
THE MILLER LAW FIRM, P.C.
950 W. University Drive
Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
ats@millerlawpc.com


***Interim Liaison Counsel for the Proposed
End-Payor Plaintiffs Class***

39

<u>**CERTIFICATE OF SERVICE**</u>

I, E. Powell Miller, hereby certify that I caused a true and correct copy of the **MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH YAZAKI DEFENDANTS AND PROVISIONAL CERTIFICATION OF A SETTLEMENT CLASS** to be served via e-mail upon all registered counsel of record via the Court's CM/ECF system on September 22, 2014

s/ E. Powell Miller
E. Powell Miller
Adam T. Schnatz
**THE MILLER LAW FIRM, P.C.**
The Miller Law Firm, P.C.
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
epm@millerlawpc.com
ats@millerlawpc.com

*Interim Liaison Counsel for the Proposed End-Payor Plaintiffs Class*

1